# United States Court of Appeals
# for the Fifth Circuit

---

No. 21-50176
Summary Calendar

---

United States Court of Appeals
Fifth Circuit

**FILED**
December 15, 2022

Lyle W. Cayce
Clerk

Latray Whitley,

*Petitioner—Appellant*,

*versus*

Bobby Lumpkin, Director, Texas Department of
Criminal Justice, Correctional Institutions Division,

*Respondent—Appellee*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:19-CV-618

---

Before Jones, Haynes, and Oldham, *Circuit Judges*.
Per Curiam:*

In 2013, a Texas jury convicted Latray Whitley of murdering Cory Cumby and sentenced him to life in prison. Whitley now petitions for habeas relief. Because he cannot overcome AEDPA's relitigation bar, we affirm.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5

No. 21-50176

I.

At trial, Alvin Clark testified that he saw Whitley shoot into Cumby's car.  And Reginald Green testified that when Whitley and Green were incarnated together, Whitley confessed to shooting Cumby.  Clark's and Green's testimony was corroborated by Clark's ex-wife, Latoya, who testified that Clark called her on the night of Cumby's murder and told her that Whitley had shot at him. Donald Grinage also corroborated Clark's account of the shooting.  Both Clark and Green denied having an agreement with either the State or federal government to testify.

After the Texas Court of Appeals affirmed the judgment on direct review, Whitley filed a state habeas application. He claimed: (1) The prosecutors violated *Napue v. Illinois*, 360 U.S. 264 (1959), by eliciting false testimony, and knowingly failing to correct false testimony, by Clark and Green regarding the existence of agreements for their trial testimony; (2) The prosecutors violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose impeachment evidence in the form of Clark's and Green's federal cooperation agreements as well as audio recordings of conversations between police and Clark's and Green's attorneys regarding a possible deal in exchange for information about the Cumby murder

The state habeas trial court conducted an extensive evidentiary hearing. It found no evidence of any agreement for either Clark's or Green's testimony and concluded that Whitley had failed to demonstrate that the State either elicited, or knowingly failed to correct, any false testimony. The state habeas court also found no evidence that the State failed to disclose material evidence of the presence of any such agreement. The Texas Court of Criminal Appeals denied habeas without a written order, based on the trial court's findings.

2

No. 21-50176

Whitley filed a § 2254 petition reasserting the above claims. The district court denied habeas relief. We then granted Whitley a COA on the above-specified issues.

## II.

Because a state court denied Whitley's claims on the merits, AEDPA's relitigation bar applies. *See* 28 U.S.C. § 2254(d); *Langley v. Prince*, 926 F.3d 145, 155 (5th Cir. 2019) (en banc). To overcome the relitigation bar, Whitley must show the state court's adjudication of the claim (1) "was contrary to . . . clearly established federal law, as determined by the Supreme Court of the United States," (2) "involved an unreasonable application of" such law, or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Each § 2254(d) avenue "is difficult to meet . . . because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Consider each in turn. First, "[a] state-court decision is contrary to clearly established federal law only if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it resolves a case differently than the Supreme Court has on a set of materially indistinguishable facts." *Lucio v. Lumpkin*, 987 F.3d 451, 469 (5th Cir. 2021) (en banc). Second, a state court's application of clearly established law is unreasonable if it is "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103. Third, because Whitley is challenging a state conviction, the state court's findings of fact must be presumed correct unless rebutted "by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Lucio*, 987 F.3d at 476.

Whitley claims he satisfies AEDPA's strictures with respect to his *Napue* and *Brady* claims. We disagree.

Under *Napue v. Illinois*, "a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment." 360 U.S. at 269. To that end, prosecutors may neither knowingly use perjured testimony nor permit false testimony to go uncorrected. *Id.* To establish a due process violation based on the State's use of false or misleading testimony, the defendant must show (1) that the witness's testimony was actually false, (2) that the prosecution knew the witness's testimony was false, and (3) that the testimony was material. *Giglio v. United States*, 450 U.S. 150, 153–54 (1972).

Whitley claims the State violated *Napue* with respect to Clark's and Green's assertions that they had no deal with either the State or federal government for their testimony. But the state court, after several evidentiary hearings, found that Clark and Green did not testify falsely. That finding was reasonable and is entitled to deference. 28 U.S.C. § 2254(e)(1). Just to name some of the factors supporting the state court's conclusion, Clark's and Green's prior plea agreements were in federal—not state—cases, were entered more than a year before Whitley's trial, and were not expressly conditioned upon their testifying against Whitley; ADA Neidhardt testified that he explicitly told Clark and Green that they would not receive any benefit from the State for their testimony; AUSA Shearer testified that he made no promises to Clark or Green for future sentence reductions based on their testifying against Whitley; and Clark's and Green's behavior at trial indicated that they were not under an assumption that they would receive a benefit for testifying. Whitley cannot come close to overcoming the presumption of correctness.

Next, under *Brady v. Maryland*, "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment." 373 U.S. at 87. The prosecution's duty to disclose extends to information affecting the credibility

of witnesses whose testimony "may well be determinative of guilt or innocence." *Giglio*, 405 U.S. at 154; *see also United States v. Bagley*, 473 U.S. 667, 676 (1985). So, to establish a *Brady* violation, a petitioner must demonstrate that (1) the prosecution suppressed evidence (2) that was favorable to the defendant and (3) that was material to the issue of guilt or punishment. *Smith v. Cain*, 565 U.S. at 75 (2012). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. A "reasonable probability" is one sufficient to undermine confidence in the outcome. *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987).

Whitley claims that the State violated *Brady* when it failed to turn over Clark's and Green's plea agreements and recordings of conversations between police and Clark's and Green's attorneys. Even if the State should have turned over the agreements and conversations, the state court reasonably determined that such evidence was not "material." The jury— *via* Whitley's trial counsel—was already aware that Clark and Green had federal convictions, that they had contacted police in 2011 and gave interviews months apart, and that neither witness had been sentenced federally at the time they spoke with Detective McNelly. As such, the state court reasonably determined that the jury's additional knowledge about Clark's and Green's federal plea agreements and conversations would have had little to no marginal impeachment value. Whitley thus fails to show "the result of the proceeding would have been different" had the evidence been disclosed. *Bagley*, 473 U.S. at 682. That is particularly true where, as here, Clark's and Green's testimony was corroborated by two other witnesses. And any in event, Whitley has failed to overcome the strictures of § 2254(d).

We AFFIRM.